We have one case on the argument calendar, and I see counsel here. Good morning to both of you. We'll start with Corwise v. FMS Investment. Thank you. Good morning, Your Honor. My name is Craig Sanders with the law firm of Barshay Sanders, and we represent the Plaintiff in this action, Cindy Corwise. This case asks this Court the question of when the balance in a collection letter is continuing to accrue interest and fees, what degree of specificity is required under 1692G, the initial Dunning letter, in order to accurately state the balance? In this matter, the initial collection letter states that the balance due is a total of principal, interest, penalty, fees and costs, and then from those numbers they derive a total. Upon receipt of this letter, when the letter is opened by Ms. Corwise, the balance as stated is inaccurate, because the balance was only accurate, or presumably accurate, at the time of its printing. The letter doesn't provide any window within which Ms. Corwise could remit payment and that this payment satisfies the debt in full. Counsel, counsel, you've pretty well dealt with this in Taylor. There's a difference between this situation and where the letter suggests that if a particular payment is made then, the debt will be paid in full. And that's what Carvel, or whatever, seems to be dealing with. But from the beginning, we said that a letter of this sort was a safe harbor for telling a person what was going on. It was a different thing if you're saying, if you pay this amount, you will be clear. But come on now, how much is a creditor expected to do beyond what we've already said? Your Honor, much of that unfortunately was a little bit garbled. But the issue in Carlin was a G letter, and whether or not it satisfies 1692G, if it fails to provide a date forward in which a debtor could remit payment to their creditor and know that it satisfied the payment of their obligation in full. Doesn't the debtor have the original contract that the debtor signed under which the debt arose and know what the interest rate is and how the penalties accrue and so forth? Perhaps, but in most circumstances, people don't have that documentation. Remembering, Your Honor, that the purpose of the FDCPA is to protect the most vulnerable people in our society. So the standard of review for this court and for all courts as to a violation is using the least sophisticated consumer standard. Let's take a least sophisticated consumer and the person in dire financial straits. That person gets a notice to pay $500. That's what it's accrued to up until the day that the letter is sent, plus principal, interest, penalties, fees, and costs that will continue to accrue. If that person then sends in a check for $150, the person now owes $350. And so does the creditor have to calculate anew what the penalties will be and what the interest is going to be? I mean, it gets very, very complicated. Your Honor, I don't believe so. I mean, if we look at our typical experiences in receipt of a credit card statement from a bank, the original lender, it will provide you with all the information we're talking about. First of all, importantly, it will provide you a window within which you can make a payment and know that that payment satisfies your obligation. That's an option. But is there an obligation to do something of that sort, of saying, if you pay by a certain time, this will be it? I understand that that's a nice way of dealing with it, but where does the FDCA require anything like that? Rather than just a statement, this is what is happening. I thought that that was a safe window that Avila, relying on the Seventh Circuit, dealing with both sections of this law, set out. Your Honor, in your holding in Carlin, sorry, in Taylor, you quoted, and I quote, in Carlin, we explain that a collection notice fails to satisfy 1692G if it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of the fees and interest that will cause the balance to increase. But that is if you are saying, if you pay this amount, you will be okay. And that's a very different kind of a letter than one that simply informs you of what the state of a contract is. A letter that says, this is a contract in which there is this much debt, and there is interest and penalties accruing, and doesn't say, if you pay X, you will be okay, is very different from a letter that says, without giving the information, if you pay X, you'll be okay. And that's the difference between Carlin and these other cases. Well, the letter can have either of two different approaches. It could either have the information that this court took note of in Avila from the Jones case, where it provides the debtor, the consumer, with the ability to calculate how much they'll owe. So when they open the letter, it's 10 days since it was printed. They know, okay, we can send this amount in. I don't think we've ever required. You could do that, but we've never required it to satisfy the statement of the amount of debt owed. I mean, I read Avila to suggest that if you say, this is the amount that's owed as of the date of the letter, you may be accruing additional charges, that that's sufficient. Well, first of all, Avila was an E letter, not the initial Dunning letter, so it didn't have the G statutory requirements embedded within that discussion. Yes, but it relied on the Seventh Circuit case. It was a G letter. Correct. It was adopting or suggesting that the Miller, which was a Seventh Circuit G case, would satisfy E, and that was the exact quote. We hold that. It satisfies E. There's no holding other than Carlin as it relates to G, and Carlin talks about more specificity and more information that the debtor is entitled to to accurately state the balance. But in Carlin, there was no statement of the debt owed as the date of the letter. It was a payoff statement, and it was all about the future. Actually, what Carlin had was a cover letter from the law firm Davidson & Fink, and behind that it had a payoff statement from Bank of America, which had an extensive amount of disclosures as to how the balance was changing over time. That debtor was actually fairly well informed vis-à-vis that statement. This letter, by example, in core wise, has none of that information. There's no suggestion whatsoever as to where fees and costs are being calculated, how they're being calculated, how interest is accruing, how fast is it accruing. The only thing we have in this letter is a partial adoption of some of the verbiage from Avila. It doesn't even have the entire Avila safe harbor. It doesn't have, if you send us a check in this amount, we'll notify you that it may not satisfy this debt. It doesn't have a mechanism for this debtor to call in to obtain the correct balance, nor with a phone number for that purpose. So here we have just a small amount of somewhat similar language to Avila in a G letter that leaves the debtor with absolutely no ability to determine what their obligation is to this creditor and what it would take to pay. Counsel, you are very good at picking at little uncertainties or impurities in opinions of our court. And if you can do that with opinions of our court, what can a poor creditor survive in the face of what you do? If what courts write is not clear enough, according to you, what can a creditor do that will ever be clear enough? This law is designed to protect debtors, but it cannot put creditors at risk. Whatever they do of the kind of actions that you are bringing, there has to be some kind of fairness to both parties. And the FDCA does not require more. Agreed, Your Honor. I don't think that the requests that the letter provide, information that the debtor could use to determine how much they owe, or, alternatively, a window of time in which the balance that they're sent in the letter would still be the full balance in order for them to make a payment and know that they've satisfied the debt. Neither of those would be an overly taxing obligation upon creditors. I mean, if we harken back to this Court's decision in Avila, they said it's no great chore for Davidson, Fink, and other debt collectors to revise their standard payoff statements to clarify the amount due, the basis for fees, or simply some information that would allow the least sophisticated consumer to deduce the amount that they actually owe. We're here asking for the same thing, exact same thing, but in the context of a G letter, it's even more important. The FDCPA can't require a debtor to have to guess how much they owe. Thank you. Thank you. We'll go to the other side. Good morning, Your Honors. Spencer Schultz on behalf of the Defendant Appelli FMS Investment Corp. Which firm are you with? Sessions Fishman Nathan & Israel. Your Honors, based on the discussion with my opposing counsel here, it seems like you have a very good grasp of the issues. You know, your position on the law may be strong. At the same time, no one who got this letter could know how to discharge the debt. You would agree, correct? I mean, satisfy it. They would not know how to satisfy the debt. No matter what they sent in, with these rolling charges, they would get another letter that would say, well, you sent that amount of money, but you know, between the interest and the penalties and the fees and the costs, it's another $39.18. And that's going to go up as well, according to interest and penalties and fees and costs. You send the check for $89, and you're going to end up owing $12. In other words, your adversary has this point that there's no way to know. From this letter, you'll never know how to satisfy your debt. Well, Your Honor, if I may make a couple points there. The first being that the particular provision we're dealing with is 1692G, and that says a debt collector must state the amount of the debt on the date of the initial communication. It doesn't say that specifically, but it says you must provide the amount of the debt in the initial communication, which we would contend, and it comports with this Court's prior decisions, that that literally means the balance owed as of the date of the letter. As of the date of the letter. Yes, Your Honor. If the letter gets delivered two days later, it's theoretically more than that. Yes, Your Honor. In fact, it's definitely more than that. Yes, Your Honor. And so, and I'm going to take my argument a little bit out of order here. So it's our contention that actually providing these detailed disclosures would do more harm than good. What the appellant is really asking for is you must provide every single way this debt may increase in the future, such that a consumer ostensibly could, you know, calculate out the amount of the debt and say, well, when I send in my letter, I know that when it gets there, this amount will satisfy the debt. And, Your Honor, I would argue that that would not help in this situation. Again, the FDCPA is meant to accommodate the least sophisticated. Is the problem that if you were required to do something like that, you would have to analyze each contract, get a lawyer to look at each contract, and then state its terms accurately at penalty of violating the act? That's absolutely correct. Each contract is different. Interest and fees accrue at various intervals. Some fees or some interest rates are fixed. Many are tied to. Some are variable, though. Some are variable. And so that would be a constantly moving target. And so I think the main thrust of my argument here, Your Honor, is that if we were to provide these detailed disclosures, the least sophisticated consumer is simply not going to be able to calculate the amount owed on any given date. Which way does that cut? Because your adversary says that means that nobody, given the letter that you sent, nobody will know how to satisfy their debt. Indeed, they can't. Well, and this, I think the more reasonable solution here is to do what we did and what Your Honors advocated for in Avila or endorsed in Avila, is you provide the amount at the time, you provide contact information so that the consumer can get the amount owed if and when they wish to make a payment, and they can call in. And, Your Honors, that's something that happens every single day with creditors. Yes, and if instead the letter suggests that a certain amount, if paid, will clear the debt, that must be accurate. It cannot say that and then have other things accrue. But that only applies if the letter suggests pay X and you will be clear. And that isn't what these letters are doing. And I think you hit the nail on the head there, Your Honor. And on top of that, not only is it truly almost impossible to predict how much the debt is going to be at any given time based on variable interest rates, as Your Honors just recently considered in the Taylor case, oftentimes creditors will waive interest and fees. And so if a debt collector says your debt is going to increase at this rate, in this amount of intervals, these fees will be applied, well, once those fees are waived or that interest is waived, well, now the debt collector has a problem. I'm sure the plaintiff's bar will say, well, you just inaccurately stated the amount of the debt. You scared. Because you stated that these fees of this kind will accrue and, in fact, the creditor is willing to waive them. Exactly. And actually that is an issue that was paramount in the Avila decision, and I'm going to briefly quote here. The district court in Avila, the district court said that a debt collector doesn't need to state the amount is increasing. And this court said the district court also expressed concern that requiring debt collectors to disclose this information might lead to more abusive practices as debt collectors could use the threat of interest and fees to coerce consumers into paying their debts. This is a legitimate concern, and to alleviate it, we adopt the safe harbor approach adopted by the Seventh Circuit in Miller. And, again, that language is here is the amount of the debt on the day of the letter. That amount will increase. If you'd like to know the amount of the debt on any particular date, please give us a call. Is there a requirement in the statute that you include the phone number? I don't think there is. I think it may very well solve your problem. On the other hand, the law that you have to argue for is that a letter that just says on the date of this letter you owe this amount, plus there will be fees and interest and everything else accruing. And if you leave off the phone number, no one's going to know what they pay. And I think that's a fair point, Your Honor. If I may say one thing, you know, this court said that there's no talismanic language that you need to use. But to directly address your point, we did provide the contact information, a phone number, in our letter. And, you know, I can't speak to every debt collector, but I assume that most debt collectors, to the extent they are looking to make contact with the consumer, get a payment. They are going to include that. I have never seen a debt collection letter that does not have a phone number. If they'll answer the phone, it won't be like calling your cable provider. I'm not sure. Will you hang for 35 minutes listening to it? Oh, I can't speak to every single debt collector, but, you know, they are there to accept a payment. And I assume they get less calls than the cable company. So, Your Honors, if I may, I just want to address two things real quick. I see I'm running out of time. You know, opposing counsel argues that a VILA does not apply here because it was a 1692E case. We submit that that's cherry-picking of sorts. It's clear that 1692G was instrumental in the Court's decision. For starters, in the lower court, the plaintiff argued that the collection letter violated 1692G and 1692E by not clarifying that the amount of the debt would increase. In this Court's decision in a VILA, it made clear that 1692G, and it says, requires disclosure only of the amount of the debt, not the amount of the debt plus whatever interest and fees may accumulate in the future. And from there, the Court went on to explain that 1692E sort of expands upon and clarifies 1692G to ensure that nothing a debt collector says is false or misleading. Here, not providing detailed disclosures is not false and misleading. And if I can back up, this Court has said a statement is false if it would lead a consumer to believe to have two interpretations, one of which is false. There's nothing, there's no way a consumer could interpret this in a way that is false simply because it has, it doesn't have these detailed disclosures. There's nothing false about that. What they're requesting is more information, not that the information we provided is in any way false. And, Your Honors, I'm just going to wrap up here unless you have any questions. The District Court held that the detailed disclosures that the appellant advances here are not required by the FDCPA. The District Court's decision was correct for three reasons. The language of the statute simply does not provide for these detailed disclosures. This Court has already held that the information that FMS provided in its letter complied with the FDCPA, and requiring these detailed disclosures would have minimal, if any, impact on a least sophisticated consumer's ability to determine the amount of a debt on any date in the future. And for those reasons, Your Honor, we submit that the District Court's decision was correct, and we respectfully ask that this court refer. Thank you. Thank you. Thank you both. We will- I have a reserve rebuttal. Did you reserve rebuttal? Because I don't have a note of it. Yes. Well, he will hear you now. Your Honor, just a couple of points. In your example, you indicated that it would require someone to analyze the contract or to get a lawyer to determine the amount of the balance. Respectfully, we deal with this issue as a society all the time. Consumers are protected by federal statutes designed to give us the information for us to make informed decisions. It's the reason why your bank gives you all the information on your credit card statement, on your mortgage statement, on your bank accounts. The FDCPA is a consumer protection statute. It's designed to protect the consumers from this exact issue, that they don't need to get a lawyer to calculate their balance, that if somebody's demanding payment from them, their advice is to that amount. Your adversary points out all these letters contain phone numbers. Now, if a letter went out like this one and it didn't have a phone number on it, I think I'd have a problem with it. But if it has a phone number on it and they're answering the phones, then you call up and you say, I'm about to write a check. How much do I have to write today? And they say $463.12. I could assure you, Your Honor, if you were to dial the phone number to call your debt collector, the phone conversation would not start and end with what your balance is. It would be far more extensive than that, and you couldn't just dial a computer to get your current balance. They would put you through the wringer in attempting to collect it because that's their job. It would be improper for me. Counsel, what you are, in effect, asking is that a collection letter state an amount and that if that amount is paid, the debt is cleared, even though letters take time to get there, even though that means foregoing interest during that time. That might be admirable, but I don't see that that is what the FDCA requires. You know, we might say there might have been a law that said when you ask to, when you inform a person of their debt, you must tell them what if they pay will be cleared. That might be admirable, but I don't see this law as asking that, requiring that. Your Honor, one would assume that the reason why there is... Is that what you are asking us to read this law as doing in practice? No, no, Your Honor, I believe that the reason why there is a 1692G requirement that a letter be sent within five days of the initial communication is that the consumer has something that tells them what they need to pay, not a verbal, not a promise on a phone that they don't have a recording on, but the equivalent of an agreement that if they remit that amount, they've satisfied their obligation. That's 1692G's purpose. Otherwise, you couldn't ascribe a purpose otherwise. They just could call you on the phone and just tell you what your balance is at any given moment, and the debtor would have to accept that without having any recourse whatsoever. Otherwise, what is the purpose of 1692G? Counsel, will you answer my question? Are you saying that what this law requires is that in letters of this sort, in forming a debtor, the debtor must be told an amount that if they pay would clear the debt? It seems to me that that is how you want us to read this statute. Is that what you are arguing, that that's the way the statute must be read because anything short of that does not protect the consumer? Your Honor, I would offer it up as the alternative of either that they provide. Oh, I want you to answer my question. I am answering your question. I'm saying that either the statute requires an amount certain for a period of time, a reasonable period of time, to quote the language from Taylor, that you know that you can send that check in and satisfy your obligation, or the mechanism to do your own calculation as to the amount due using the standard that was discussed in Avila under the Jones case. This is the amount per diem that adds on to your debt. It's a pretty easy calculus at that point, days times amount, and you could figure out how much you owe. One of the two, Your Honor. Thank you. Thank you both for reserve decision. The case of Smith v. Town of Ramapo was taken on submission. The case of United States v. Whitaker is taken on submission, and the case of Amaker v. Bratt is taken on submission. That's the last case on calendar. Please adjourn court. Court is adjourned.